# CHARLESTON.

W. H. MARPLE v. EDWARD HADDAD

(No. 5876)

Submitted April 19, 1927.    Decided April 26, 1927.

1. NEGLIGENCE—*One Carried Gratuitously at Own Request Takes Automobile as He Finds it, Subject to Operator's Duty to Warn of Known Defect.*

   One who is carried gratuitously in an automobile and at his own request, takes the machine as he finds it, subject to the duty of the operator to warn such licensee of any known dangerous defect in the vehicle.   (p. 509).

   (Negligence, 29 Cyc. p. 460.)

2. SAME—*Automobile Operator Owes Duty of Reasonable Care to Guest.*

   The operator of an automobile owes the duty of reasonable care to a guest, whether he be an invitee or a licensee. (p. 510).

   (Negligence, 29 Cyc. p. 460.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Action by W. H. Marple against Edward Haddad and others. Judgment for plaintiff, and defendant named brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Morton, Mohler & Peters,* for plaintiff in error.

*Thomas West* and *J. Howard Hundley,* for defendant in error.

HATCHER, PRESIDENT:

This is an action for damages for the death of Herbert Marple. The jury returned a verdict in favor of plaintiff for $3,500.00. To a judgment for that amount, the defendant, Ed Haddad, alleges error.

The defendant was driving his truck along a public highway in Kanawha county in October of 1925. Marple, aged 17, and another boy, who were walking, hailed defendant, asking for a ride to Charleston. Defendant consented, and they entered the truck. After proceeding some distance, the truck suddenly swerved from the right to the left of the road (which was sixteen feet wide), ran over an eight-inch curb, and down a steep embankment, turning over several times, and injuring the three occupants. Marple died as a result of his injuries.

There is a sharp conflict of theories as to what caused the accident. Plaintiff contends that defendant was driving at a reckless rate of speed, and in rounding a curve, lost control of the truck. Five eye-witnesses fix the speed of the truck at from 22 to 40 miles per hour, and their description of the road varies from "a curve" to "straight as an arrow". Defendant's theory is that the accident resulted, not from a high rate of speed, but from a defect in the steering apparatus of the truck. He testified that the truck had been running in the usual manner and suddenly, with no warning, became uncontrollable and left the road. Two mechanics who got the truck back on the road after the wreck found that the left-hand steering link was disconnected, making it impossible to guide the truck. They, as well as another mechanic who later examined the link, testified that the condition of the link was produced by gradual wear; that it could not have been caused by the truck hitting the curb as it left the road; and that the defect was a latent one, not ascertainable by ordinary inspection.

Three instructions were given at the plaintiff's request, which are as follows:

No. 1.

"The Court instructs the jury that the speed limit fixed by law in this state for the operation of a truck of the kind in controversy and over the roads mentioned in the evidence in this case is twenty-five miles per hour, and that the running of such truck on said road at a greater rate of speed is a violation of the law of this state. And you are further instructed that if you believe from the evidence in this case that the defendant at the time of the accident in question was driving his truck at a greater rate of speed than twenty-five miles per hour, and that such speed was the natural, probable and anticipated cause of the injury and death of the plaintiff's decedent complained of, then such violation of the law was the proximate cause of the injury complained of."

No. 2.

"The Court instructs the jury that if you believe from the evidence in this case that the defendant permitted the plaintiff's decedent, Herbert A. Marple, at his request to ride upon his truck which he was driving on a public road of this state and that Herbert A. Marple was riding on said truck, with such permission, then you are instructed that the defendant owed to the said Herbert A. Marple the duty to use ordinary care in driving and operating said truck; and you are further instructed that if you believe from the evidence that the defendant while the said decedent was so riding on his truck, drove and ran said truck in a negligent manner by running the same at such a high rate of speed as that said truck became unmanageable and by reason thereof left the road causing the injury and death of the said Herbert A. Marple as complained of, then you should find for the plaintiff such damages as you believe from all of the evidence will be fair and just, not exceeding the sum of ten thousand Dollars."

No. 3.

"The Court instructs the jury that it was the duty of the defendant to use due care to have and keep the steering wheel and gear of his truck in such order and repair as that the operation of said truck would be reasonably safe for the carriage of persons whom defendant would permit to ride thereon at their request when the same was being operated by him. And you are further instructed that if you believe from the evidence in this case that Herbert A. Marple got upon and was riding on the defendant's truck by permission of the defendant, at the request of said Marple, and that the steering wheel was then loose and out of repair, and that the defendant then knew or should have known by the exercise of reasonable diligence, that the same was out of repair, when he permitted said decedent to ride on said truck, and that by reason of said steering wheel being out of repair, the defendant lost control of and failed to manage said truck thereby causing said truck to leave the road and go over an embankment carrying Herbert A. Marple with it, thereby causing the death of Herbert A. Marple; and if you further believe from all of the evidence that said decedent was not guilty of any negligence on his part contributing to the accident, then you should find for the plaintiff in such sum as you believe fair and just, not to exceed ten thousand dollars."

Plaintiff's instruction No. 1 is censured by counsel for defendant as follows: "by plaintiff's instruction No. 1 the Court tells the jury what the proximate cause was, that if they believed that the truck was exceeding the speed limit, then that was not only a violation of the law and negligence *per se* but was the *proximate cause*. This amounted to a directed verdict in this case."

In construing this instruction counsel have overlooked the clause submitting to the jury whether the speed in excess of the statutory limit "was the natural, probable and anticipated cause of the injury." The instruction therefore does not tell the jury that exceeding the statutory speed limit was the proximate cause of the injury, but properly submits

for jury decision the connection between the speed and the injury. The instruction is based on point seven of the syllabus of *Griffith* v. *Coal Co.,* 78 W. Va. 34, and while theoretically correct, is subject to criticism because of its involved construction. *Blevins* v. *Bailey,* 102 W. Va. 415.

Instruction No. 2 is objected to because it required the defendant to use *ordinary care* in relation to the deceased. Counsel say that the only duty of defendant was to refrain from wantonly or wilfully injuring him. There are two lines of decisions in the states on the question of the care due a licensee in such case. Equally distinguished courts support each line. Marshalling and comparing the weighty arguments of the several decisions would serve no useful purpose here as this court is committed by the case of *Moorefield* v. *Lewis,* 96 W. Va. 112, to the doctrine of ordinary or reasonable care. A further investigation of the authorities only confirms our faith in the justice of that decision, and that it is supported by the weight of authority. ''We therefore now hold, in accord with what seems the great weight of authority and as a choice among many rules, each of which bristles with difficulties, that, as to the gratuitous guest in a vehicle owes to such guest the duty of exercising ordinary care to avoid personal injury to him * * *. This conclusion we are forced to reach, even though the rule as thus declared may seem incongruous with the innate and natural spirit of gratitude with which such hospitality should be met. We must also decline to recognize any such possible distinction as is spoken of in several decisions between the guest who asks for the favor and the guest who is first invited by the host.'' *Mitchell* v. *Raymond* (Wis.) 195 N. W. 855. ''The hospitality of an owner and driver of an automobile should not be burdened with a responsibility that makes it unreasonably hazardous for him to invite or even permit another to occupy a seat in his automobile. But one who takes another into one of these high-powered swiftly moving machines knows. disaster may follow, unless he operates it with the required degree of care. He must know and realize

that he has voluntarily taken the life and safety of a human being into his care.*** The general rule as established by the authorities is that the owner or operator of an automobile owes to an invited guest the duty of exercising reasonable care in its operation and not unreasonably to expose him to danger and injury by increasing the hazard of travel.*** It will not do to say that the operator of an automobile owes no more duty to a person riding with him as a guest at sufferance or as a self-invited guest, than a gratuitous bailee owes to a block of wood. The law exacts of one who puts a force in motion that he shall control it with skill and care in proportion to the danger created. This rule applies to a guest at sufferance as well as to a guest by invitation." *Munson* v. *Rupker* (Ind.) 148 N. E. 169.

But reasonable care for the safety of young Marple commenced only when he entered the truck. The defendant owed him no duty of prior inspection. "He who enters an automobile to take a ride with the owner also takes the automobile and the driver as he finds them. *Munson* v. *Rupker, supra.* "A guest upon the premises or in the vehicle of another, must take such premises or vehicle as he finds them", (subject to the exception that it is the duty of the owner to warn the guest of any "trap" known to the owner). *Mitchell* v. *Raymond, supra.* "A city did not owe duty to inspect the steering apparatus of its automobile, to discover whether it was properly lubricated, to render it liable for death of an assessor, who had solicited the city engineer, using its car, assigned to the official use of his department, for carriage to a certain quarter of the city; the assessor having been a mere licensee, though not a wrongdoer or trespasser, in the car." *Carroll* v. *City of Yonkers* 184 N. Y. Supp. 847.

Consequently we must hold that plaintiff's instruction No. 3 was erroneous in requiring of the defendant due care to inspect and keep in repair his truck for the benefit of a licensee.

From our holding on plaintiff's instruction No. 2, it will appear that the lower court properly refused defendant's instructions Nos. 2 and 4. Defendant's instruction No. 3

fairly presents his theory of the case. There is evidence to support it and it was error to refuse it. In requiring of the defendant a reasonable inspection, that instruction placed on him a heavier duty than the law requires.

Contributory negligence is not alleged in this case. Under *Joyce* v. *Brockett* 200 N. Y. Supp, 394, and cases there cited, if the deceased made no protest against the rate of speed prior to the accident, the question of contributory negligence is a pertinent one.

For the foregoing reasons the judgment of the lower court will be reversed, the verdict of the jury set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*